IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO.: 1:09-cr-17-SPM/AK-1

TIBOR ALEX GUBA,

       Defendant.
_____/

## ORDER DENYING MOTION TO SUPPRESS

This cause comes before the court on Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law (doc. 83). The Government has filed a Response in Opposition (doc. 86). Defendant argues that all evidence obtained on April 22, 2009, must be suppressed because law enforcement officers twice entered onto his property prior to obtaining a search warrant, and because false and misleading information was provided in support of the application for a search warrant. A hearing was held on January 12, 2010, and the parties presented testimony and other evidence concerning the features of Defendant's property, the entries by law enforcement, and the facts set forth in the application for a search warrant. For the reasons expressed herein, the Motion to Suppress will be denied.

**BACKGROUND**

The Defendant owns a house in a rural section of Micanopy, Florida, off U.S. Highway 441. The house sits more than 360 feet back from the highway, and, at all times relevant to the Defendant's Motion, the grounds of the property were overgrown with dense vegetation, including bamboo, rendering view of the house from the highway difficult or impossible. There is a large, closed gate at the entrance of the long, crushed-rock driveway leading from the highway directly to the Defendant's house.

To the south of the Defendant's property is a shabby, unpaved road, located between the Defendant's house and the neighboring property to the south, which appears to be an old access easement. On two occasions, agents of the Drug Enforcement Agency traversed this road to gain access to the Defendant's house for the purpose of conducting a knock and talk with the Defendant.

Agent Hunter and Agent Andrews first entered the Defendant's property on April 17, 2009. The agents were not aware whether the Defendant was currently residing at the residence, and surmised that, if he was not, he may have been renting the home to someone they could speak with during a knock and talk. When approaching the Defendant's home from the access road, Agent Hunter detected the odor of raw marijuana coming from the house. He also noticed lava rocks and potting soil at the front of the house, both of which are

used in hydroponic marijuana grows.

On April 20, 2009, the agents entered the Defendant's property again from the access road for the purpose of conducting a knock and talk. There were no cars at the home, but the agents surmised that there might be someone inside. Agent Hunter approached the front door of the home and no one answered. He did not encounter any fencing between the access road and the Defendant's property.

On April 22, 2009, Agent Hunter prepared an Application for a Search Warrant, with the assistance of Agent Wayne Andrews, who had accompanied him on the attempted knocks and talks. Agent Hunter previously worked on approximately eight or nine indoor grow operation investigations. Agent Andrews has been with the Drug Enforcement Agency for nineteen years and his field of expertise is indoor and outdoor marijuana grow operations. In his affidavit in support of the Application for a Search Warrant, Agent Hunter provided that the average power consumption between November 2008 and March 2009, which totaled 2,216 kilowatts, and the usage in December 2008, which totaled 3,161 kilowatts, were consistent with an indoor marijuana grow operation. Agent Hunter also stated that he received information from cooperating defendants and confidential sources that the Defendant was involved in the distribution of controlled substances, and provided his observations during the surveillance of the Defendant and the attempted knocks and talks at the Defendant's home on

April 17 and April 20, 2009.

**DISCUSSION**

**A.     Knock and Talk**

With limited exception, the Fourth Amendment requires a warrant before the Government can conduct a search of "persons, houses, papers, and effects." U.S. Const. amend. IV; Oliver v. United States, 466 U.S. 170, 176 (1984).  While a person's house lies squarely within the protection of the Fourth Amendment, the surrounding land might not.  Id.  The expectation of privacy that society is prepared to recognize extends from the home only to land that is within the curtilage area.  Id.   Activities conducted beyond its borders are not within the expectation of privacy that attaches to the home.  Id. at 180.

Curtilage is the area around the home that "harbors those intimate activities associated with domestic life and the privacies of home."  United States v. Dunn, 480 U.S. 294, 300 (1987).  This is in contrast to "open fields," which include all undeveloped or unoccupied areas outside of the curtilage even if those areas are neither open nor fields as those terms are commonly understood.  Id. at 304.  Accordingly, heavily wooded areas can qualify as open fields.  Id.  Open fields are regarded for Fourth Amendment purposes as tantamount to public places.  Id.   Steps taken to establish a zone of privacy in an open field may create a subjective expectation of privacy, but it is not an interest recognized by society as protected under the Fourth Amendment.

Oliver, 466 U.S. at 182.

Open fields can be accessed and searched by law enforcement without a warrant, even though the land is secluded, fenced, and posted to keep out trespassers. Oliver, 466 U.S. at 182. "The law of trespass recognizes the interest in possession and control of one's property and for that reason permits exclusion of unwanted intruders. But it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment." Id. at 184 n.15. "[T]respass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest." Id. at 183.

It is well-established that "[t]he Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006). "'[O]fficers are allowed to knock on a residence's door or otherwise approach a residence seeking to speak to the inhabitants just as any private citizen may.'" Id. (quoting Estate of Smith v. Marasco, 318 F.3d 497, 519 (3d Cir. 2003)). Their approach is not restricted to the front door. If it appears that someone is in or around a house, officers may take reasonable steps to initiate contact by going to other areas of the property. Taylor, 458 F.3d at 1204-05 (officers could move away from front door to talk to person coming from barn); Hardesty v. Hamburg Twp., 461 F.3d 646, 654 (6th Cir. 2006)

(officers could go to back yard or back door to speak to occupant believed to be home).

In the present case, agents used the access road adjacent to, bot not on, the Defendant's property, before crossing over into the Defendant's property and approaching the Defendant's home for the purpose of conducting a knock and talk. It is clear that the agents permissibly employed this road prior to gaining access to the Defendant's property, as the overgrown path is an open field, and the Defendant has no legitimate expectation of privacy in property that was not his own. Moreover, the entry of the agents onto the Defendant's property for the purposes of conducting a knock-and-talk is lawful. The agents reasonably believed that there may have been someone present at the home who might speak to them. Agent Hunter properly included his suspicious observations of the Defendant's Property in his affidavit and Application for Search Warrant. Accordingly, Defendant's Motion to Suppress on grounds that a warrant was required for the law enforcement agents to approach his home and knock on his door will be denied.

**B. Probable Cause**

To prevail on his Franks challenge, Defendant must show two things: first that misstatements or omission in the probable cause affidavit were intentional or reckless; and second that they were material to a proper determination of probable cause. United.States v. Burston, 159 F.3d 1328, 1333 (11th Cir. 1998).

Defendant objects to Agent Hunter's summary of electric bill usage in support of the Application for Search Warrant, in that the Defendant included the month of December in the average monthly usage calculation and listed December's usage separately, although the agents alleged that the grow operation began in January, as well as because the electrical usage could reasonably have been greater than normal because it was an especially cold winter requiring the use of space heaters. Defendant also objects that Agent Hunter's reference to confidential sources cannot constitute probable cause.

As an initial matter, the facts presented in support of th Application for Search Warrant were reasonable and proper, and were not reckless or intentional misstatements or omissions. Moreover, based on the totality of the circumstances, it is clear that the Application for Search Warrant demonstrated reasonable probability that the Defendant was conducting a marijuana grow operation. While the monthly electricity averages and tips from confidential sources, standing alone, may not have satisfied the probable cause standard, taken together, along with the aroma of marijuana emanating from the house and the presence of marijuana grow materials outside the home, there existed sufficient cause to support the granting of the search warrant. Therefore, the Defendant's Motion to Suppress Evidence on this basis must be denied.

**CONCLUSION**

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that

Defendant's Motion to Suppress Evidence (doc. 83) is **denied**.

DONE AND ORDERED this <u>fourth</u> day of February, 2010.

        *s/ Stephan P. Mickle*
        Stephan P. Mickle
        Chief United States District Judge